## GOODMAN *v.* DIAMOND.

LANDLORD AND TENANT—LEASE—CONSTRUCTION.

The decree of the court below determining that defendants, lessees of space in plaintiff's store building, should have the use of a front portion of one window back to the first panel for display purposes, where it appears that such space had been customarily used by them until friction arose, and their lease gave them the right to "window space for a proper display of millinery," but without specifying the exact space, and also determining the time of payment of money arising from daily sales by plaintiff to defendants, and the time of payment by defendants to plaintiff of the rent, *held*, justified by the record.

Appeal from Genesee; Black (Edward D.), J. Submitted October 17, 1919. (Docket No. 84.) Decided December 22, 1919.

Bill by Philip E. Goodman, by his attorney, against Harry Diamond and another to enjoin the violation of a lease, and to declare the same forfeited. Defendants filed a cross-bill asking affirmative relief. From the decree rendered, plaintiff appeals. Affirmed.

*Harold Goodman,* for plaintiff.

*Thomas F. Stockton,* for defendants.

BROOKE, J. The plaintiff in this case operates a store in which he sells ready-to-wear ladies' goods in the city of Flint. On March 19, 1917, he entered into an agreement with defendant Harry Diamond by the terms of which he leased to Diamond certain space in his store for a consideration of 10% of the gross sales made by Diamond, the minimum to be $125 per month. The agreement covered a period of three years

and one month and would therefore expire May 1, 1920. One clause of the contract provided:

"The party of the first part hereby also agrees to furnish light, heat, water, local telephone and janitor services; also window space for a proper display of millinery, also all necessary wrapping paper and twine that may be required by the party of the second part in his said millinery business."

So long as the plaintiff himself was in charge of his own business the parties seem to have been able to get along without friction. In June, 1918, however, plaintiff entered the military service of the United States and later was sent to Russia. In his absence he turned over the management of his store to other members of his family. He gave a power of attorney to his father, Solomon Goodman, but two or more of his brothers were active in the store. Very soon after his departure difficulties arose between his representative and the Diamonds, husband and wife, with reference to the window space to be used in the display of the Diamond merchandise. These disputes were very acrimonious, resulting upon at least one occasion in actual physical violence. The situation becoming intolerable, plaintiff, through his father, as attorney in fact, filed his bill of complaint praying for an injunction temporary and permanent against the Diamonds, husband and wife, restraining them from the use of profane and obscene language in the store either towards each other or toward the agents or employees of either the plaintiff or defendants, and further that the said Diamonds, husband and wife, be restrained from using physical violence toward any of the agents or employees of plaintiff or any of their customers. A further prayer for relief is that the lease agreement subsisting between the parties be canceled and held for naught. Upon the filing of his bill a preliminary injunction issued in accordance with its prayer restrain-

ing defendants from using physical violence or bois-
terous, profane or obscene language in the store. De-
fendants answered, admitting some of the averments
of the bill and denying others, and, by way of cross-
bill, averring that plaintiff had wrongfully interfered
with the use by defendants of the proper space in one
of the front windows of plaintiff's store for the dis-
play of their merchandise. An injunction was sought
on the cross-bill restraining plaintiff from preventing
defendants' use of one of the windows to the depth
of the first panel for display. Upon the filing of the
cross-bill an injunction was issued against plaintiff in
accordance with the prayer thereof. The case went
to trial upon the pleadings, testimony being taken in
open court. We find a very considerable record made
up principally of varying accounts of several quarrels
and physical clashes between defendants and one or
other of plaintiff's agents. The court entered a decree
making both preliminary injunctions permanent, de-
termined that the defendants should have the use of
a front portion of one window back to the first panel
and regulated in his decree the time of payment by
plaintiff to defendants of the money received for the
sale cf goods and the time of payment by defendants
to plaintiff of the rent reserved in the lease quoted.
Plaintiff has appealed. His principal contention being
that the relations between the parties by reason of the
unwarranted acts of the defendants have been such as
to destroy any possibility of friendly co-operation and
to imperil or at least to injure his business.

From a careful perusal of the record we gather that
while defendants were not always afforded a position
for display in the front of one or the other of the
windows, yet that such display was customarily so
placed. We are, therefore, of opinion that the court
made a proper determination of that question in the
interest of harmony, the quoted part of the agreement

being silent as to exactly what portion of the window space might be used by defendants. Construed in its entirety we think that the lease agreement between the parties justifies the decree of the court below as to the time of payment of the money arising from daily sales, by plaintiff to defendants, and the time of the payment by defendants to plaintiff of the amount of rent reserved. This lease or privilege has now a little more than four months to run. It is asserted in briefs of counsel that since the decree of the court below the parties have been able to avoid overt encounters and that the business has been prosperous. Enlightened self-interest should urge both parties to this litigation to assume an attitude of forbearance toward each other during the short time this contract still lives.

The decree of the court below is affirmed, but without costs.

BIRD, C. J., and SHARPE, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.